**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 1 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

JOSEPH W. BERNARDS, also known
as Ricky Cove,

        Defendant - Appellant.

No. 98-4051

D. Utah

(D.C. No. 97-CR-369)

**ORDER AND JUDGMENT** *

Before **ANDERSON** , **McKAY** , and **LUCERO** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. See Fed. R. App. P. 34 (a)(2); 10th Cir. R. 34.1.9. This cause is
therefore ordered submitted without oral argument.

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3

Joseph W. Bernards appeals his conviction for bank fraud in violation of 18 U.S.C. § 1344(1). He contends that the evidence established only a single deceptive act, and, thus, was insufficient to establish that he engaged in a scheme or artifice to defraud as required by the statute. We affirm.

## BACKGROUND

The facts are undisputed. In July 1997 Bernards was experiencing serious financial problems. R. Vol. III at 149. Among his debts was a defaulted car loan with Zions Bank (Zions), which Zions had charged off after numerous unsuccessful attempts at repossession. Bernards' checking account at Zions had been closed, and his savings account with Zions had a balance of only $5.89. On Friday, July 25, 1997, [1] Bernards drove up to the Sugarhouse branch of Zions, where he attempted to deposit a non-negotiable promotional coupon in the amount of $42,800 into his savings account. R. Vol. II at 35, 40. The coupon originally had the words "THIS IS NOT A CHECK" and "NON-NEGOTIABLE COUPON" printed across its face in bold, capitalized letters. [2] Id. at 14. However, at the

---

[1] Friday is generally a busy bank day, and this was a particularly hectic Friday since the bank had been closed on July 24 for a state holiday. R. Vol. II at 59.

[2] The coupon was part of a mortgage banker's promotional solicitation for home equity loans and represented a potential amount which might be available to direct mailing recipients who contacted the company. R. Vol. II at 15-16.

time of the attempted deposit, both of the phrases had been either cut off the coupon, or blacked out with a broad black felt marker. Id. at 17. The drive-up teller refused to accept the coupon for deposit, telling Bernards that it was non-negotiable. Id. at 40-44. Bernards took the coupon back, and at 1:38 p.m., he successfully deposited it at another Zions branch (Fourth South). R. Vol. III at 97. Through an apparent clerical error, $42,800 was immediately credited to his savings account and made available for disbursement. See R. Vol. II at 68-71.

Seven minutes following the deposit, Bernards withdrew $500[3] from a Zions ATM that was located several blocks away. R. Vol. III at 98. Also, at some point during that day, he called the credit management department of Zions to determine the pay-off amount on his charged-off car loan. The collections officer agreed to settle for a payment of $9000, which was less than the outstanding loan amount. However, she informed him that she would not be able to release the car title which she held as collateral, unless he paid with certified funds; otherwise he would have to wait up to ten days for clearance. Bernards informed her that he would settle with certified funds. Id. at 129-30.

Thereafter, on Saturday and Sunday, Bernards made two additional $500 withdrawals at a Zions ATM. Id. at 99-100. Then, early Monday morning, he

---

[3]Pursuant to the terms of his ATM card, $500 was the maximum that could be withdrawn in any 24 hour period. R. Vol. III at 98.

went to the Sugarhouse branch where he asked how much money was available from his savings account.    Id. at 119.  After being told that the full amount of the coupon had been credited to his account, he completed two withdrawals; he withdrew $9000 with which he purchased a certified check payable to Zions, and he made a separate, second withdrawal of $9000 in cash.     Id. at 101; R. Vol. II at 54.  He then went to the Main Street branch of Zions where the credit management department was located.  He paid off the car loan with the certified check, received the released car title in exchange, R. Vol. III at 131-138, and he also withdrew another $500 from the Zions ATM in the building.     Id. at 102-03.

Later that afternoon, Bernards went to Henry Day Ford.  Explaining that his credit was too bad to qualify for a purchase, he negotiated an arrangement to prepay a two year lease on a new top-of-the-line Ford Expedition XLT.     Id. at 141, 143-44, 149, 157.  After the negotiations were concluded, Bernards then went to another nearby Zions branch where he withdrew $9000 in cash.     Id. at 103.  Finally, just before bank closing time, he went to yet another branch where he withdrew $9500 in cash.    Id.  He then returned to Henry Day Ford, where he paid approximately $13,000 with bills that were still in binders from the bank.     Id. at 157.

On Tuesday, July 29, 1997, Zions became concerned about the flurry of activity surrounding Bernards' account, which by then showed a balance of

approximately $4300.  Id. at 104.  The final loss to Zions was $38,503.  Id. at 106.

## DISCUSSION

Following the district court's denial of Bernards' motion to dismiss based on insufficiency of the evidence, the jury found Bernards guilty of bank fraud in violation of 18 U.S.C. § 1344(1).  On appeal, Bernards contends that the district court erred in denying his motion.  A motion to dismiss based on insufficiency of the evidence is properly denied if any rational trier of fact could find the essential elements of the offense beyond a reasonable doubt.  Lucero v. Kerby, 133 F.3d 1299, 1312 (10th Cir. 1998).  We review the denial of such a motion de novo, viewing the direct and circumstantial evidence and the reasonable inferences therefrom in the light most favorable to the government.  United States v. Flores, 149 F.3d 1272, 1276-77 (10th Cir. 1998).

To obtain a conviction under § 1344(1), the government must prove that the defendant knowingly executed a scheme or artifice to defraud a financial institution.  18 U.S.C. § 1344(1);  United States v. Rackley, 986 F.2d 1357, 1360-61 (10th Cir. 1993);  United States v. Bonnett, 877 F.2d 1450, 1453 (10th Cir. 1989).  Consistent with Congressional intent, courts have liberally construed the statute to reach a wide range of fraudulent activity.  See Bonnett, 877 F.2d at

1454.  Thus, courts have concluded that § 1344(1) prohibits any "recognizable scheme formed with the intent to defraud."  United States v. Norton, 108 F.3d 133, 135 (7th Cir.) (quoting United States v. LeDonne, 21 F.3d 1418, 1425 (7th Cir. 1994)), cert. denied, 118 S. Ct. 66 (1997).  "The broad range of schemes covered by the statute is limited only by a criminal's creativity."  Id.

Bernards contends that his single deceptive act of depositing a nonnegotiable coupon into his account does not constitute a scheme or artifice. Whether a particular statute proscribes a defendant's conduct is a question of law which we review de novo.  See Bonnett, 877 F.2d at 1454.  In this case, we reject Bernards' facile characterization of his conduct as the passing of a single worthless coupon, akin to passing a single bad check.  Rather, we conclude that, as a matter of law, § 1344 can reach the conduct which the government presented in this case.  Cf. United States v. Ragosta, 970 F.2d 1085, 1091 (2d Cir. 1992) (upholding the § 1344(1) conviction of a defendant who, in a fifteen minute period, made numerous withdrawals in excess of his account balance from an "off-line" ATM which failed to deduct the withdrawals from his account).

Based on the uncontroverted evidence, a reasonable juror could have found that Bernards intentionally engaged in a course of conduct designed to defraud Zions and to obtain money and property to which he knew he was not entitled. That is, a reasonable juror could have found that Bernards' Friday lunch hour

deposit of the worthless coupon was merely the first step in the scheme's execution. Over the next three days, before Zions had any opportunity to discover the true nature of the coupon or its improper crediting, Bernards completed the scheme by 1) making various weekend ATM withdrawals in the maximum amount possible, and 2) traveling to various branches throughout Monday to make four separate withdrawals which totaled $36,500 in the aggregate, part of which he used to pay off his charged-off car loan with Zions in exchange for the car title.

Because a reasonable juror could have found the essential elements of the crime beyond a reasonable doubt, we find no error in the district court's denial of Bernards' motion to dismiss.

AFFIRMED.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge