**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 11 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

    v.

MIGUEL ANGEL DUQUE, aka, Duke
Duque,

    Defendant - Appellant.

No. 98-6065
(D. Ct. No. CR-97-152-C)
(W.D. Okla.)

---

**ORDER AND JUDGMENT***

---

Before **TACHA**, **McKAY**, and **MURPHY**, Circuit Judges.

---

After examining the briefs and the appellate record, this three-judge panel

has determined unanimously that oral argument would not be of material

assistance in the determination of this appeal.  See Fed. R. App. P. 34(a)(2); 10th

Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

Defendant-Appellant Miguel Angel Duque pled guilty to one count of

possession with intent to distribute approximately five (5) pounds of marijuana.

---

*This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

The district court sentenced him to sixty months imprisonment followed by a four-year period of supervised release. Defendant appeals his conviction, arguing that the district court erred in applying a two-level firearm enhancement pursuant to United States Sentencing Guideline ("U.S.S.G.") § 2D1.1(b)(1) and that he should have received a downward adjustment in his base offense level under U.S.S.G. § 3B1.2 because he was a minor or minimal participant in the criminal enterprise. We exercise jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291. We affirm the sentence imposed by the district court.

## I. Background

The defendant was charged, along with numerous other individuals, in a seventy-count indictment arising out of a multi-ton marijuana importation and distribution ring. Specifically, he was charged with one count of conspiracy to possess with the intent to distribute marijuana (count 1) and two counts of possession with intent to distribute approximately five (5) pounds of marijuana (counts 53 and 54). Although defendant was not involved in the importation of the marijuana, he was a significant distributor in the organization. Defendant pled guilty to count 53.

The presentence report ("PSR") made reference to defendant's admissions that he possessed several firearms during the course of the drug trafficking operation. In addition, although the operation handled tons of marijuana, the

defendant was only held accountable for 300.15 kilograms of marijuana equivalent in the PSR, the amounts he personally distributed. The PSR recommended increasing the defendant's base offense level by two points pursuant to U.S.S.G. § 2D1.1(b)(1). It made no adjustment upward or downward for Mr. Duque's role in the offense under U.S.S.G. § 3B1.2. Defendant objected to the PSR's application of the above Sentencing Guidelines. In addition, defendant objected to certain facts in the PSR pertaining to weapons on the ground that the facts were irrelevant because the weapons were not proximate to the offense for which he was convicted. However, defendant did not contest the veracity of the facts contained in the PSR.

During the sentencing hearing, a government witness testified that he had seen Mr. Duque in possession of firearms on at least two occasions.[1] The witness testified that defendant had possession of the guns in close proximity to marijuana in houses where marijuana from the drug trafficking operation was sold or stored. The district court adopted the PSR and sentenced Mr. Duque to sixty months imprisonment followed by a four-year period of supervised release.

## II. Firearm Enhancement

Defendant first argues that the district court erred in increasing his base

---

[1] The government's brief makes reference to portions of the sentencing transcript that neither party provided in the original record to this court. We sua sponte order the record supplemented with the relevant portions of the transcript.

offense level by two points pursuant to U.S.S.G. § 2D1.1(b)(1) because the government offered no evidence showing that any guns were used or found during, or were proximate to, the offense *of conviction*.  We review the district court's interpretation of the Sentencing Guidelines de novo and its factual findings for clear error.  See United States v. Flores, 149 F.3d 1272, 1279 (10th Cir. 1998), cert. denied, 119 S. Ct. 849 (1999).  We give due deference to the district court's application of the Guidelines to the facts.  See United States v. Vazari, 164 F.3d 556, 568 (10th Cir. 1999); United States v. Smith, 131 F.3d 1392, 1399 (10th Cir. 1997), cert. denied, 118 S. Ct. 1109, 1321, 1543 (1998).

"The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons.  The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."  U.S.S.G. § 2D1.1, commentary, application note 3.  The government bears the initial burden of "'proving by a preponderance of the evidence the gun was proximate to the drug offense.'"  Flores, 149 F.3d at 1280 (quoting United States v. Lang, 81 F.3d 955, 964 (10th Cir. 1996)).  "This nexus may be established by showing that the weapon was located nearby the general location 'where drugs or drug paraphernalia are stored or where part of the transaction occurred.'"  Id. (quoting United States v. Roederer, 11 F.3d 973, 982 (10th Cir. 1993)); see also Vaziri, 164 F.3d at 568.  "Once the government

establishes that the gun was possessed in proximity to the drugs or transaction, the burden shifts to the defendant to 'show that it is clearly improbable that the weapon was related to the offense.'" Flores, 149 F.3d at 1280 (quoting United States v. Robertson, 45 F.3d 1423, 1449 (10th Cir. 1995) (internal quotation and citation omitted)). Furthermore, in determining whether to apply a sentence enhancement, the district court must consider all relevant conduct. See United States v. Washington, 11 F.3d 1510, 1516 (10th Cir. 1993) (citing U.S.S.G. § 1B1.3). Thus, the sentencing court looks not only to the offense of conviction, but also to all other acts "'that were part of the same course of conduct or common scheme or plan as the offense of conviction.'" Roederer, 11 F.3d at 982 (quoting U.S.S.G. § 1B1.3(a)(2)); see also, e.g., United States v. Hunter, -- F.3d --, 1999 WL 227208, at *2 (11th Cir. Apr. 20, 1999) ("[A] firearm enhancement is 'to be applied whenever a firearm is possessed during conduct relevant to the offense of conviction'" (quoting United States v. Smith, 127 F.3d 1388, 1390 (11th Cir. 1997))); United States v. Falesbork, 5 F.3d 715, 720 (4th Cir. 1993) ("Even when a guilty plea is entered on a single count of possession, the court must nevertheless look to the entire relevant conduct in determining the sentence. . . . [That conduct] includes possession of a gun while engaging in drug sales related to, though distinct from, the crime of conviction."); United States v. Willard, 919 F.2d 606, 610 (9th Cir. 1990) (holding that "for purposes of the

firearm enhancement, the [sentencing] court properly looked to all of the offense conduct, not just the crime of conviction").

The government provided sufficient evidence to the district court to satisfy its burden of showing proximity. The witness who testified at the sentencing hearing stated that on at least two occasions he saw the defendant, at locations where the drug trafficking operation sold or stashed marijuana, possess a gun in the vicinity of marijuana. Moreover, the PSR references defendant's own admissions that he owned weapons during the period of time he was involved in the operation. Although defendant objected to these statements on other grounds, he never challenged their veracity. This evidence establishes proximity to the offense conduct. That the evidence does not specifically establish a gun was present during the particular offense *of conviction* is of no consequence.

Because the government established proximity, the burden shifted to defendant to show that it was clearly improbable that the firearms in his possession were connected with "the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). The defendant did not meet this burden. Consequently, the district court did not err by increasing defendant's base offense level two points pursuant to U.S.S.G. § 2D1.1(b)(1).

### III. Minor or Minimal Participant Adjustment

Mr. Duque also claims that he was a minor or minimal participant in the

criminal enterprise, and the sentencing court therefore erred by refusing him a downward adjustment under U.S.S.G. § 3B1.2(b). "Whether a defendant is a minimal or minor participant is a factual question for the district court." United States v. Harfst, 168 F.3d 398, 401 (10th Cir. 1999). As noted above, we review this determination for clear error. See Flores, 149 F.3d at 1279. The defendant has the burden of showing that he is entitled to a downward adjustment under § 3B1.2 by a preponderance of the evidence. See Harfst, 168 F.3d at 401; Smith, 131 F.3d at 1398.

Section 3B1.2 permits a four-point downward adjustment in a defendant's base offense level if his participation in the criminal enterprise was minimal, or a two-point decrease if the participation was minor, or a three-point decrease if it falls between minimal and minor. See U.S.S.G. § 3B1.2. The purpose of the downward adjustment is to decrease a defendant's base offense level when his role in the offense "makes him substantially less culpable than the average participant." Id. § 3B1.2, commentary, background. In order to qualify for the four-point minimal participant downward adjustment, the defendant must show that he is "plainly among the least culpable of those involved in the conduct of a group." Id. § 3B1.2, commentary, application note 1. According to the Guidelines, this adjustment applies infrequently. See id. § 3B1.2, commentary, application note 2. The two-point minor participant decrease is appropriate when

the defendant shows that he is "less culpable than most other participants, but [his] role could not be described as minimal." Id. § 3B1.2, commentary, application note 3.

Even assuming Mr. Duque could show the above with respect to the drug trafficking operation as a whole, a doubtful proposition given that he was a significant distributor of marijuana, that would not end the inquiry as to whether he is entitled to a downward adjustment under § 3B1.2. For the purpose of sentencing, the district court may consider all relevant conduct in determining the amount of drugs for which the defendant is accountable, including all reasonably foreseeable drug transactions made in furtherance of the jointly undertaken criminal activity. See id. § 1B1.3; Roederer, 11 F.3d at 978. As § 1B1.3, Application Note 2 states:

> A "jointly undertaken criminal activity" is a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy.
>
> . . . .
>
> With respect to offenses involving contraband (including controlled substances), the defendant is accountable for all quantities of contraband with which he was directly involved and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook.

Thus, when sentencing a defendant who is a participant in a marijuana importation and distribution ring, the district court may, even if the defendant is

not convicted of conspiracy, calculate the base offense level holding the defendant accountable not only for the drugs the defendant personally distributed, but for all of the drug transactions undertaken by the operation that he was aware of or could have foreseen.

Given the size of the drug trafficking operation involved in this case, the district court could have held the defendant accountable for considerably more marijuana than he personally handled. Nonetheless, the district court chose to hold defendant accountable for only that amount of marijuana that he personally distributed. In United States v. James, 157 F.3d 1218, 1220 (10th Cir. 1998), this court recently held that when a defendant's base offense level was predicated solely on the amount of drugs he personally handled, omitting the relevant conduct of the jointly undertaken criminal activity, the district court necessarily took into account the defendant's minor role in the criminal enterprise. Thus, "[a]ny further reduction would cede [defendant] an undeserved windfall." Id. at 1220. We based our holding in James, in part, on the language of § 3B1.2, Application Note 4, which states:

> If a defendant has received a lower offense level by virtue of being convicted of an offense significantly less serious than warranted by his actual criminal conduct, a reduction for a mitigating role under this section ordinarily is not warranted because such defendant is not substantially less culpable than a defendant whose only conduct involved the less serious offense.

We found the reasoning of Note 4 was applicable not only when the defendant

was convicted of a less serious offense, but also when he received a less onerous sentence because of his minor role in the criminal enterprise. See James, 157 F.3d at 1220. Therefore, in light of our decision in James, we hold that the district court did not err in concluding that Mr. Duque was not entitled to a downward adjustment as a minimal or minor participant under U.S.S.G. § 3B1.2.

## Conclusion

For the reasons discussed above, we AFFIRM the sentence imposed by the district court.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge