F I L E D
United States Court of Appeals
Tenth Circuit

AUG 17 1999

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

MARVIN LEE MADDUX,

    Defendant-Appellant.

No. 99-6005
(D.C. No. CR-98-122-R)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **BRORBY**, **EBEL** and **LUCERO**, Circuit Judges.

In this direct federal criminal appeal, Marvin Lee Maddux challenges the

district court's enhancement of his sentence by 2 points under U.S.S.G.

§ 2D1.1(b)(1) for Maddux's possession of a gun in connection with his offense of

conviction, the manufacture of methamphetamine. We affirm.

---

[*]After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This Order and Judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

The undisputed facts are contained in the presentence report ("PSR"). On April 2, 1998, pursuant to a search warrant, officers searched Maddux's residence in Edmond, Oklahoma, and found a non-operational methamphetamine ("meth") laboratory. Items included 8.469 grams of meth, syringes, glass jars and tubing, funnels, pseudoephedrine, filters, gallon jars containing various liquids, red devil dye, numerous plastic bottles, and a butane torch. Maddux was not present when the search warrant was executed, and a warrant later was issued for his arrest. Maddux became a fugitive.

On June 10, 1998, officers executed a search warrant at a residence in Tuttle, Oklahoma, where, in a detached garage, Maddux was believed to be residing and cooking meth. Officers found a non-operational meth laboratory in the garage. Items included numerous glass jars with unknown substances, a drain opener, beakers, an electric skillet, a hot plate, Ziplock bags, muriatic acid, filters, empty pseudoephedrine tablet bottles, toluene, syringes, and a quadruple beam scale. There were 47.107 grams of meth in the laboratory items. In the residence itself, officers located a syringe with meth, trace amounts of meth, drug paraphernalia, and two sawed-off shotguns. The meth in the house totaled 1 gram.

Investigators also learned that Maddux was manufacturing meth in Oklahoma City with an individual named Ben Wicks. On July 6, 1998, pursuant

to a consensual search of Wick's residence, officers found the remnants of a meth lab: an empty box of pseudoephedrine, an organic chemistry study guide, heavy rubber boots and gloves, a hydrochloride gas generator, an empty five gallon can of toluene, and an orange liquid with white residue. Maddux's fingerprint was found on a piece of laboratory equipment, and investigative interviews revealed that Wicks had cooked meth with Maddux several times.

That same day, officers located Maddux at a Motel Six and arrested him in his room. On a table in the room were a .22 caliber gun and a brown paper sack. Inside the sack were iodine and red phosphorus. A box of .22 caliber ammunition, syringes, a butane lighter, and a .12 gauge shotgun shell were also on the table.

Maddux was charged in a two-count indictment with the manufacture of meth on April 2, 1998 (Count 1), and the possession of a firearm following a prior felony conviction (Count 2). Under a plea agreement, Maddux pled guilty to Count 1, and the government dismissed Count 2. The government later objected to the failure of the PSR to enhance the sentence by 2 levels under U.S.S.G. § 2D1.1(b)(1). There were no other objections by either the government or the defendant. At sentencing, the district court sustained the government's objection and enhanced Maddux's sentence by 2 levels for the gun possession. The court stated:

[I]t just strikes me that this defendant was obviously involved in the manufacture of methamphetamine on an ongoing basis. He was at a motel with precursors to the manufacture of methamphetamine, and I think it just kind of jumps out at you that that weapon was there in connection with the manufacture and protection of a business he had on an ongoing basis, and it just strikes me that the weapon was used in connection with the business that he was in.

(R. Vol. 2, Tr. at 4.)

Maddux appeals his sentence, arguing that the 2-level enhancement was improper because his possession of the gun (at the time of his arrest at the motel on July 6, 1998) was unrelated to the offense of conviction (the manufacture of meth on April 2, 1998). Reviewing the record and the relevant law, we disagree.

U.S.S.G. § 2D1.1(b)(1) provides for a 2-level enhancement to the criminal offense level "[i]f a dangerous weapon was possessed" in connection with certain drug offenses, including the manufacture of drugs. Id. Application Note 3 to § 2D1.1 explains that

[t]he enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense.

U.S.S.G. § 2D1.1, comment. (n.3). In United States v. Roederer, 11 F.3d 973 (10th Cir. 1993), this court held that the relevant conduct provision of the Sentencing Guidelines applies to weapon enhancements under § 2D1.1(b)(1). See id. at 982. Thus, in evaluating whether the enhancement should be applied, the sentencing court looks not only at the offense of conviction but also at all acts

"'that were part of the same of course of conduct or common scheme or plan as the offense of conviction.'" See id. (quoting U.S.S.G. § 1B1.3(a)(2)).

"The government bears the burden of proving by a preponderance of the evidence that the gun was proximate to the drug offense." United States v. Flores, 149 F.3d 1272, 1280 (10th Cir. 1998) (quotations omitted), cert. denied, 119 S. Ct. 849 (1999).  To make such proof, the government must show by a preponderance of the evidence "that a temporal and spacial relation existed between the weapon, the drug trafficking activity, and the defendant."  Id. (quotations omitted).  A showing "that the weapon was located near the general location where drugs or drug paraphernalia are stored or where part of the transaction occurred" establishes this nexus.  Id. (quotations omitted).  Once the government has met its burden, the defendant then must "show it is clearly improbable that the weapon was related to the offense."  Id. (quotations omitted). "Because the decision to apply § 2D1.1(b)(1) is a factual one, we review for clear error."  See United States v. Eastland, 989 F.2d 760, 769 (10th Cir. 1993).

We find no clear error in the district court's decision to apply the enhancement.  As the district court observed, the record reveals that Maddux was manufacturing meth on an ongoing basis.  Indeed, at the time of his arrest, drug paraphernalia and chemicals used in manufacturing meth, iodine and red phosphorus, were found next to his gun in his motel room.  The proximity of

these items to the gun provide a sufficient nexus between Maddux's possession of the gun and drug trafficking activity for purposes of the enhancement. See Flores, 149 F.3d at 1280. While, as Maddox points out, the government did not show that Maddux possessed the gun during the offense of conviction, we find the government did show by a preponderance of the evidence that Maddux possessed the gun during conduct relevant to that offense, which is sufficient under our case law. See Roederer, 11 F.3d at 982. Furthermore, we do not believe Maddux has demonstrated that it is clearly improbable that the weapon was related to that relevant conduct. Flores, 149 F.3d at 1280. Accordingly, we affirm the district court's 2-point enhancement under U.S.S.G. § 2D1.1(b)(1), and reject Maddux's arguments to the contrary as meritless. See Flores, 149 F.3d at 1280 (where defendant challenged § 2D1.1(b)(1) enhancement on the basis that government failed to prove drug transactions occurred at residence where weapon was found, stating that "it is not necessary for the Government to show that drugs and money changed hands near the weapon; the weapon may simply serve as a potentially deadly means of protecting the trafficker's goods"); Roederer, 11 F.3d at 981-83 (§ 2D1.1(b)(1) enhancement proper where defendant convicted for distributing cocaine in parking lot, but loaded revolver subsequently was found in defendant's apartment along with drugs and drug paraphernalia).

AFFIRMED.

The mandate shall issue forthwith.

ENTERED FOR THE COURT


David M. Ebel
Circuit Judge