**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 17 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

　　Plaintiff-Appellee,

v.

WILLIAM VANCE LANE, JR.,

　　Defendant-Appellant.

No. 99-6242
(W. District of Oklahoma)
(D.C. No. 98-CR-93)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRORBY**, **KELLY,** and **MURPHY**, Circuit Judges.

## I.  INTRODUCTION

　　After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After a jury trial, William Vance Lane, Jr. was convicted of one count of conspiracy to posses cocaine base with intent to distribute in violation of 21 U.S.C. § 846 and three counts of distribution of cocaine base in violation of 21 U.S.C. § 841. In calculating Lane's sentence under the United States Sentencing Guidelines ("U.S.S.G."), the district court increased Lane's offense level two points pursuant to U.S.S.G. § 2D1.1(b)(1) on the ground that Lane possessed a firearm. Furthermore, at the sentencing hearing, the district court denied Lane's request to depart downward pursuant to U.S.S.G. § 5K2.0. Lane premised his departure motion on (1) the disparity in the Sentencing Guidelines as to the length of sentences for cocaine base and powder cocaine and (2) Congress' failure to adopt the 1995 recommendations of the United States Sentencing Commission to reduce that disparity. The district court concluded that it lacked authority to depart on those grounds. On appeal, Lane challenges both the district court's decision that a § 2D1.1(b)(1) firearm enhancement was appropriate and its conclusion that it was without power to depart downward on the grounds advanced at the sentencing hearing. This court exercises jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742 and **affirms**.

## II. ANALYSIS

### 1. SECTION 5K2.0 DOWNWARD DEPARTURE MOTION

Lane contends the district court erred when it concluded that it lacked authority to depart downward based on the disparity in the length of sentences between cocaine base and powder cocaine and on Congress' failure to correct that disparity. This court reviews *de novo* a district court's conclusion that it is without authority to grant a downward departure. *United States v. Maples*, 95 F.3d 35, 37 (10th Cir. 1996).

This court has specifically and clearly held that the disparity in the Sentencing Guidelines between cocaine base and powder cocaine is not a valid basis for downward departure. *See United States v. Maples*, 95 F.3d 35, 37-38 (10th Cir. 1996) ("[T]he expansive issue of appropriate sentencing levels for crack offenses is not the sort of discrete, individual and case-specific mitigating circumstance justifying downward departure . . . ."); *see also United States v. McCloud*, 127 F.3d 1284, 1291 (10th Cir. 1997) (citing *Maples*).[1] The fact that the Sentencing Commission recommend the elimination of the disparity does not

---

[1]This court is puzzled by Lane's counsel's failure to discuss or even cite *Maples* and *McCloud*, binding Tenth Circuit precedent which directly control the disposition of this issue. *See In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993) (noting that a panel of this court is "bound by the precedent of prior panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court").

alter the result. *See Maples*, 95 F.3d at 37 ("Congress has now rejected the Commission's recommendation, voting instead to preserve the higher sentences for crack-related crimes. Accordingly, . . . the district court lacked power to depart and the sentencing disparities of the current scheme have not only been considered by Congress and the President, but also retained."). Thus, the district court was correct in concluding that it lacked the power to depart on those grounds.

## 2. SECTION 2D1.1(b)(1) FIREARM ADJUSTMENT

Lance asserts that the district court erred in increasing his offense level two points pursuant to U.S.S.G. § 2D1.1(b)(1) for possession of a firearm. Section 2D1.1(b)(1) provides that "[i]f a dangerous weapon (including a firearm) was possessed, increase [the defendant's base offense level] 2 levels." This enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *McCloud*, 127 F.3d at 1291-92. Accordingly, the government must establish by a preponderance of the evidence that the weapon was proximate to the drug offense. *See United States v. Flores*, 149 F.3d 1272, 1280 (10th Cir. 1998), *cert. denied*, 119 S. Ct. 849 (1999). If the government succeeds in this, the burden then shifts to the

-4-

defendant to "show that it is improbable that the weapon was related to the offense." *United States v. Robertson*, 45 F.3d 1423, 1449 (10th Cir. 1995).

The weapon at issue in this case was seized during the execution of a search warrant at an apartment shared by Lane and his live-in girlfriend and co-defendant Nakisha Johnson. When the warrant was executed on May 6, 1998, Lane and Johnson were present in the apartment. During the sentencing hearing, Federal Bureau of Investigation Special Agent Nick Manns testified that during the course of the search, law enforcement authorities found a small quantity of marijuana in the pocket of a child's dress hanging in Lane's bedroom closet. Also located in that closet was a Pittsburgh Steelers football jacket identical to a jacket Lane had been observed wearing on previous occasions. In the inside pocket of the jacket, detectives found an unloaded .38 caliber revolver in a holster. Officers also found .38 caliber ammunition scattered throughout the bedroom and closet. Manns testified that the discovery of the firearm and holster together indicated that the weapon was intended to be carried. Manns further testified that his investigation showed that Lane had been dealing drugs out of the apartment. In fact, the government introduced at trial a videotape recording of Lane engaging in one such transaction. That transaction, however, took place in December and the firearm was not seized until May.

Lane's primary assertion at the sentencing hearing was that the government failed to carry its burden of proof that the weapon was present because it had not adduced any evidence that the weapon was present in the apartment during any of the drug transactions caught on videotape or detailed by confidential informants. In response, the government presented testimony from Manns that during a confession, Lane's co-conspirator Kelvin Bagby indicated that Lane spoke about possessing a firearm and shooting someone. Manns further testified Lane's co-conspirator Kore Winston indicated during an interview that Lane had displayed the .38 caliber revolver while Winston was visiting Lane's residence. Winston indicated that Lane stated he had purchased the gun from a crack user in order to protect his drug supply and other belongings.

At the conclusion of the sentencing hearing, the district court noted some initial hesitancy because of the time between the video proof of drug dealing from Lane's apartment in December to the time the warrant was executed in May. Nevertheless, the district court ultimately concluded as follows:

> Here, with regard to the crack-cocaine activities, it appears to me that the evidence supports the government's position that Mr. Lane was actively pursuing the crack-cocaine criminal venture . . . up to the time he was arrested, and that would span the period of time between December of 1997 and the last video proof of his use of the apartment for that purpose was established, to the time of the search warrant when the proof of the last act from the apartment. So it does appear that, while the proof of the last act from the apartment was in December of 1997 and the gun was found on May 6th of 1998, that, in the meantime, Mr. Lane actively pursued the criminal venture as

-6-

> he had before, and had the gun, as he admitted to both Bagby and Kore Winston, not only having it but showing it to Winston and having told Bagby that he had it for protection, and having showed Winston that he had bought it from a [crack] smoker for protecting his drugs and his house and his personal property at his apartment.
>
> So, with respect to the crack-cocaine criminal venture that was ongoing, it is my belief that those requirements are now satisfied.

On appeal, Lane does not contest the district court's findings of fact, including the findings that the conspiracy continued up until the time he was arrested or that he told Winston and Bagby that he possessed the weapon and used it for protecting his drugs. Instead, Lane simply asserts that the district court erred in concluding the government was not required to prove the firearm was possessed at the same time drug dealing was conducted at his apartment. This court reviews factual findings under U.S.S.G. § 2D1.1(b)(1) for clear error; gives due deference to the district court's application of the sentencing guidelines to the facts; and reviews purely legal questions *de novo*." *United States v. Vaziri*, 164 F.3d 556, 568 (10th Cir. 1999).

Lane's argument seriously misapprehends the basis upon which the district court imposed the § 2D1.1(b)(1) enhancement. In addition to the three specific distribution counts, Lane was convicted of conspiracy to possess with intent to distribute cocaine base. At the sentencing hearing, the district court specifically found, as a matter of fact, that the conspiracy was ongoing up until the point of Lane's arrest. The district court further found, crediting the statements of Bagby

-7-

and Winston, that Lane possessed the weapon during the course of that conspiracy and utilized the gun to protect the drugs that were part and parcel of the underlying conspiracy. The fact that a gun matching the descriptions by Bagby and Winston was found in Lane's apartment on May 6th merely corroborates those statements. Furthermore, Manns specifically testified at the sentencing hearing that the manner in which Lane had stored the firearm in its holster indicated that the gun was meant to be carried.

Lane is simply incorrect as a matter of law in asserting that the government had to tie the gun and the apartment to a specific drug transaction. Instead, the government simply had to prove, by a preponderance of the evidence, a temporal and spatial relation existed between Lane, the firearm, and the underlying drug conspiracy. *See United States v. Roederer*, 11 F.3d 973, 982 (10th Cir. 1993). The evidence adduced by the government was sufficient to establish that relationship. Accordingly, the burden shifted to Lane to show that it is improbable that the weapon was related to the conspiracy. *Robertson*, 45 F.3d at 1449. Because Lane did not adduce any such evidence, the district court did not err in applying the § 2D1.1(b)(1) adjustment.

### III.  CONCLUSION

For those reasons set out above, the sentence imposed by the United States District Court for the Western District of Oklahoma is hereby **AFFIRMED**.

ENTERED FOR THE COURT:


Michael R. Murphy
Circuit Judge