**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 16 1997**

**PATRICK FISHER**
**Clerk**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

CALVIN MOORE,

      Defendant-Appellant.

No. 96-3307

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 92-20071-01)**

Leon Patton, Assistant United States Attorney, Kansas City, Kansas, for Plaintiff-Appellee.

David J. Phillips, Federal Public Defender, Kansas City, Kansas, for Defendant-Appellant.

Before **EBEL, LOGAN,** and **BRISCOE**, Circuit Judges.

**EBEL**, Circuit Judge.

      This case involving a small-time drug conspiracy among crack addicts in Kansas City, Kansas, has bedeviled the district court there for nearly five years, requiring three separate sentencing hearings. We now conclude that the evidence

in the record is sufficient as a matter of law to support the district court's finding that Moore's uncharged, unconvicted, post-conspiracy drug deal was part of the same course of conduct encompassed in the conspiracy for which Moore was charged and convicted. As a result, we affirm.

I.

The facts of this case were reported in an earlier panel decision, see United States v. Moore, 83 F.3d 1231 (10th Cir. 1996), and only those facts relevant to the resolution of this appeal will be repeated here. In the fall of 1991, federal investigators became aware of a network of drug dealers operating out of a house in Kansas City, and over the course of six months, undercover agents made five purchases, for a total of 65 grams, of cocaine base (crack cocaine) from the group. The largest single purchase was the last one, on March 5, 1992, for 22.6 grams of crack.

The investigation then entered a six-month hiatus as agents worked on other cases, but in the fall of 1992, investigators decided it was time to put Moore's network out of business. Over the course of four days in early September 1992, undercover agents negotiated and ultimately agreed with Moore to purchase nine ounces of crack for $8,100. This was a much larger quantity than any of their previous controlled buys from Moore. When the agents arrived to pick up their purchase, Moore's accomplice told them that Moore could only

supply the crack one ounce at a time. The agents insisted on talking to Moore directly about the change in the agreement, but when everyone emerged from the house to use a car phone outside, the waiting surveillance team mistakenly believed the transaction was complete, and they arrested Moore's accomplice. The nine ounces of crack cocaine never arrived at the house, and when investigators searched the house, they did not find even the one ounce that had been promised.

Moore subsequently pled guilty to one count in a six-count indictment, that is, a conspiracy beginning October 3, 1991 and ending March 5, 1992. The September 1992 deal for nine ounces of crack was not included in any count in the indictment. Finding that Moore's sentence calculation should include the September 1992 deal, the district court sentenced Moore to 188 months in prison. Thereafter, Moore's trial counsel failed to file a timely appeal, and Moore subsequently brought a motion under 28 U.S.C. § 2255 (habeas corpus) alleging ineffective assistance of counsel. The district court granted Moore's motion, vacated his original sentence, and reimposed a 188-month sentence so that Moore might have the opportunity to appeal the sentence.

On appeal, this circuit reversed and remanded the case because the district court erroneously believed it was without jurisdiction to reevaluate the original sentence or to hear new evidence. See Moore, 83 F.3d at 1235. At the new

sentencing hearing, the district court heard extensive evidence and decided to reverse one of its original findings, that Moore was an organizer, leader, manager or supervisor in the conspiracy. As a result, the court calculated Moore's total offense level under the Sentencing Guidelines at 34, with a Category I criminal history score, resulting in an available sentencing range of 151 to 188 months. The court sentenced Moore at the bottom of the range -- 151 months -- because of the "nature of the offense and the fact that the Defendant has no serious record of criminal offenses." Moore now challenges his new sentence, contending that the nine-ounce deal that was never consummated should not have been included in the drug-amount calculation and a correct calculation would have resulted in an offense level of 32, with an available sentencing range of 121 to 151 months.

II.

We review a district court's legal interpretations of the Sentencing Guidelines de novo, but the factual findings underlying the district court's calculation of the offense level may be reversed only if they are clearly erroneous. See United States v. Wacker, 72 F.3d 1453, 1477 (10th Cir.), cert. denied, 117 S. Ct. 136 (1996). The government bears the burden of proving by a preponderance of the evidence the amount of drugs attributable to a defendant for sentencing purposes. See United States v. Richards, 27 F.3d 465, 468 (10th Cir. 1994). We will not disturb a sentencing court's factual findings unless they are "without

factual support in the record, or if after reviewing all the evidence we are left with the definite and firm conviction that a mistake has been made." United States v. Garcia, 78 F.3d 1457, 1462 (10th Cir.) (quoting United States v. Beaulieu, 893 F.2d 1177, 1182 (10th Cir. 1990)), cert. denied, 116 S. Ct. 1888 (1996).

After ten years of living under the Sentencing Guidelines, it is uncontested today that uncharged, unconvicted conduct may be considered by a district court in calculating a sentence. See United States Sentencing Commission, Guidelines Manual, § 1B1.3, comment. (backg'd) (Nov. 1991) ("Conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range."); see also United States v. Watts, 117 S. Ct. 633, 638 (1997) (per curiam) (holding that even conduct for which the defendant is acquitted may be considered for sentencing purposes). It is well-settled in this circuit that a sentencing court may look beyond the offense of conviction and "may consider quantities of drugs not alleged in calculating a defendant's base offense level, provided the drugs were part of the same course of conduct or common scheme or plan as the offense of conviction." United States v. Roederer, 11 F.3d 973, 978 (10th Cir. 1993). Moore does not challenge this well-settled principle.

III.

A.

Moore has focused his argument in this appeal on the scope of section 2D1.4, the guideline for evaluating the amount of drugs attributable to a conspiracy.[1] See U.S.S.G., § 2D1.4 comment. (n.1) (Nov. 1991). Section 2D1.4,

_____

[1]The parties also have disputed whether it was error for the district court to use the Guidelines Manual that was effective November 1, 1992, rather than the Manual effective November 1, 1991. The record indicates that the Court relied on the November 1992 Manual even though the parties both agreed that the appropriate Manual was the earlier one. (See R., vol. VIII, 1996 Sentencing Tr., 324-25 (quoting language from the November 1992 Manual).)

Moore claims he was prejudiced by this mistake. He argues that because of the terminology and structure of the 1991 guideline on drug conspiracies, the calculation of his sentence should have been limited to his "offense of conviction." Moore argues that this prejudice arises from the fact that 1992 guideline for conspiracies eliminated the terminology and structure of the 1991 guideline. Compare U.S.S.G., § 2D1.4, comment. (n.1) (Nov. 1991) with U.S.S.G., § 2D1.1, comment. (n.12) (Nov. 1992).

We note, however, that the Sentencing Commission said the change between the 1991 and 1992 guidelines merely "clarifie[d] and simplifie[d] the guideline provisions dealing with attempts and conspiracies in drug cases." U.S.S.G., App. C, Amend. 447 (Nov. 1992) (effective Nov. 1, 1992). Other courts have held that Amendment 447 made no substantive change for sentencing of conspiracies. See, e.g., United States v. Hendrickson, 26 F.3d 321, 330 n.6 (2d Cir. 1994); United States v. Crawford, 991 F.2d 1328, 1332 n.3 (7th Cir. 1993).

In Moore's case, though, we need not determine whether Amendment 447 effected a substantive change in the law because we resolve this case on other grounds. As we discuss below, regardless of the scope of the conspiracy guideline in section 2D1.4 (Nov. 1991), the district court appropriately considered the uncharged September 1992 deal as "relevant conduct" under section 1B1.3 (Nov. 1991). Thus, the more important question for this case is not the wording of the conspiracy guideline, but rather the requirements for finding uncharged activity to be "relevant conduct." For purposes of this appeal, there is no material difference between the 1991 and 1992 Manuals on the scope of relevant conduct.

however, is not the end of the analysis.  This provision merely tells the district court how to measure an amount of drugs that was under negotiation but not actually delivered.  See id.  The next step for the district court is to follow the Guidelines' circuitous instructions for determining whether this negotiation should be considered "relevant conduct."  See U.S.S.G. § 1B1.2(b) ("After determining the appropriate offense guideline section . . . , determine the applicable guideline range in accordance with § 1B1.3 (Relevant Conduct).").  Turning to the relevant conduct guideline, the district court is then directed to review section 3D1.2(d), the guideline for grouping multiple offenses.  See U.S.S.G., § 1B1.3(a)(2) (Nov. 1991).[2]  In the end, this hopscotch through the Manual requires the district court to make specific findings first, that "the offense [is] the type of offense that, if the defendant had been convicted of both offenses, would require grouping with the offense of conviction," and second, that "the offense [i]s 'part of the same course of conduct or common scheme or plan.'"  United States v. Taylor, 97 F.3d 1360, 1363 (10th Cir. 1996) (quoting U.S.S.G., § 1B1.3(a)(2)).

We treat the determination of  whether uncharged conduct is "groupable" with the offense of conviction as a conclusion of law.   See id. at 1363 (holding

_____

[2]The November 1992 Manual has a similar reference to the guideline for grouping offenses.  See U.S.S.G., § 1B1.3(a)(2) (Nov. 1992).

that an appellate court may make a conclusion of law on the grouping question despite the lack of a district court finding on the question).  Thus, in this case, we review the grouping issue de novo.  The second requirement for determining relevant conduct -- whether the offense is part of the same course of conduct or common scheme -- is a pure factual question for which the district court must make specific findings to support its sentence.  See United States v. Crockett, 82 F.3d 722, 729-30 (7th Cir. 1996) (holding that factual findings generally are required, but the error in that case was harmless because the defendant's actual sentence would have been no different without the challenged unconvicted conduct).

In Moore's case, he claims that the September 1992 deal was outside the scope of the indictment, which alleged a conspiracy ending in March 1992, and therefore should not have been included in his sentencing calculation.[3]  As Moore's counsel stated during the 1996 sentencing hearing, "[T]here has to be a

---

[3]There is some doubt as to whether Moore's counsel adequately presented the argument he raises here to the district court so as to put the district court on notice as to the issue in contention.  Despite this possible waiver of the argument, we have considered the issue because the government makes no claim to us that Moore waived the argument, and the record arguably can be interpreted as raising the issue:  During the 1996 sentencing hearing, Moore's counsel argued against considering the September deal as part of the same course of conduct as the prior five crack purchases.

stop to the case. I think the case stopped back in March of 1992. And -- and what went on [thereafter] was a leap of faith."

Based on the record before this Court, it is clear as a matter of law that Moore's September 1992 agreement to sell nine ounces of crack was an offense that would be "groupable" with his conviction for conspiracy to distribute crack. Cf. Taylor, 97 F.3d at 1364 (finding that a dismissed drug conspiracy count was "groupable" with the drug manufacturing count to which the defendant pleaded guilty). Section 3D1.2(d) makes grouping of certain drug offenses, including distribution, mandatory. See U.S.S.G., § 3D1.2(d) (Nov. 1991). The application note for this subsection requires the court to group a conspiracy or attempt charge in the same manner as the underlying substantive offense. See id., comment. (n.6). Thus, because Moore's September 1992 agreement was an attempt to distribute crack, it may be grouped together with his offense of conviction, i.e., conspiracy to distribute crack, as well as his other unconvicted offenses, i.e., distribution of crack.

When the district court discussed the inclusion of Moore's September 1992 drug deal under Note 12 to § 2D1.1 (Nov. 1992) as part of the same course of conduct as his earlier sales, it equated the inclusion of drug quantities under that provision to the inclusion of drugs as relevant conduct. In that discussion, the court said,

There is no reason to conclude that offense there [in Note 12 to § 2D1.1 (Nov. 1992)] does not include relevant conduct, because that is precisely how offense is defined in that guideline at U.S.S.G. Section 1B1.1, Commentary Application Note 1-L. See U.S. v. Garcia, 69 F.3d at 810, Seventh Circuit case from 1995, which uses [the] relevant conduct and negotiated amounts provisions together, as well as U.S. v. Nichols, 986 F.2d 1199, Eighth Circuit, 1993.

The September 1992 drug deal can clearly be included for sentencing purposes as relevant conduct under the 1991 version of the Sentencing Guidelines, which Moore agrees is the correct version to use.

The legal standard for determining whether a defendant's uncharged acts are part of the same course of conduct as his offense of conviction is quite generous. This circuit has adopted the view of the Second Circuit in distinguishing between a "common scheme or plan" and the "same course of conduct." See Roederer, 11 F.3d at 979 (quoting United States v. Perdomo, 927 F.2d 111, 115 (2d Cir. 1991)). In assessing a defendant's course of conduct, the court is to consider such factors "'as the nature of the defendant's acts, his role, and the number and frequency of repetitions of those acts, in determining whether they indicate a behavior pattern.' Similarity, regularity, and temporal proximity are the significant elements to be evaluated." Id. (quoting United States v. Santiago, 906 F.2d 867, 872 (2d Cir. 1991)).

In Moore's case, the record shows substantial similarity between his nine-ounce crack deal in September 1992 and the smaller deals that comprised the earlier conspiracy: The same undercover agents negotiated the deal, for the same kind of illegal substance, using the same players in Moore's crew of associates, and relying on the trust and good faith that had developed from their earlier deals. Although the amount of crack in the September 1992 was larger than ever before, this difference does not outweigh the rest of the similarities with the earlier activities.

As for the other Roederer factors of regularity and temporal proximity, we believe that the six-month break in 1992 in Moore's dealings with undercover agents is insufficient to establish an interruption in his course of conduct. The record establishes that on every occasion that undercover agents attempted to arrange a purchase of drugs, Moore agreed and the deal eventually was consummated. The regular pattern of drug purchases was interrupted only when undercover agents decided for independent reasons to put the Moore investigation into hiatus. However, when the agents resumed the investigation, they again met with little difficulty in arranging a deal. Furthermore, the six-month hiatus does not undermine the conclusion that Moore's activity in September 1992 was temporally proximate with the charged conspiracy in March 1992. See Roederer, 11 F.3d at 980 (finding temporal proximity in a course of cocaine dealing, despite

a nine-month break in drug purchases during the buyer's pregnancy). On the basis of this record, we have come to a firm conviction that as a matter of law Moore's September 1992 deal for nine ounces of crack was part of the same course of conduct as his earlier drug deals.

B.

The parties spend much of their briefs arguing over the applicability of Footnote 4 in Reyes, specifically the statement there that a quantity of drugs under negotiation may not be included in sentencing as relevant conduct unless there is evidence that the defendant actually possessed or distributed the drugs. Reyes, 979 F.2d at 1408 n.4. Moore believes that in light of this footnote, because there was no evidence that he actually possessed or distributed the disputed nine ounces of crack, this deal cannot be included in his sentence. This Court, however, views Footnote 4 as pure dictum, and thus, the statement is not controlling.

Reyes involved a defendant who had pleaded guilty to one count of using a telephone to facilitate a cocaine distribution conspiracy. Id. at 1406-07. The defendant accepted the court's finding that ten ounces of cocaine purchased by his co-conspirators could be attributed to him, but he challenged the inclusion of another pound of cocaine that the government claimed he negotiated to sell to government agents. See id. at 1407-08, 1407 n.2. The Reyes panel reversed the

defendant's sentence solely on the grounds that there was insufficient evidence to conclude an actual negotiation or agreement occurred.  Id. at 1410-11.  The court specifically acknowledged in Footnote 4 that it need not reach the question of whether the pound of cocaine could be considered relevant conduct.  See id. at 1408 n.4.  The finding that there was no negotiation or agreement meant that there was no activity -- such as the alleged negotiation -- that could be considered "conduct," let alone whether it would be "relevant" for sentencing.

In support of our view that Footnote 4 is not controlling, we note the holdings from other circuits that uncharged amounts of drugs in a drug conspiracy may be attributed to a defendant as relevant conduct even if he never actually possessed or distributed the drugs.  See, e.g., United States v. Ynfante, 78 F.3d 677, 680-82 (D.C. Cir. 1996) (upholding a sentence based on an agreement to sell two ounces of cocaine even though only one ounce was delivered);  United States v. Garcia, 69 F.3d 810, 818-20 (7th Cir. 1995) (upholding a sentence based on negotiations to deliver four kilograms of cocaine); United States v. Davern, 970 F.2d 1490, 1493-95 (6th Cir. 1992) (upholding a sentence based on agreement to buy 500 grams of cocaine when only 85 grams were actually delivered).[4]

---

[4]Even the defendant in Reyes conceded this point, that a negotiated amount of drugs may be included in a sentencing calculation even if the defendant did not actually possess or distribute those drugs.  See Reyes, 979 F.2d at 1408.  This concession by the defendant confirms our conclusion that the court's discussion in Footnote 4 is dicta.

IV.

Moore raises an alternative argument in this case that the district court erred in finding that he fully intended and was capable of delivering the nine ounces of crack negotiated in the September 1992 deal. Moore contends that there was insufficient evidence to support this factual finding under Application Note 1 for section 2D1.4.[5]

During the 1996 sentencing hearing, the district court found that the last negotiation between Moore and undercover agents resulted in a firm agreement, "virtually a bilateral contract." The court found that Moore intended to deliver the nine ounces of crack, and that he was capable of filling this order even though it was more than ten times the amount of any previous purchase.

These factual findings are not clearly erroneous. There is ample evidence in the record to support the district court's view that even if Moore could not deliver the nine ounces all at once, the offer to deliver the crack in one ounce

---

[5]The district court actually relied on language in the 1992 Manual that is identical, although located elsewhere, to the 1991 guideline. See U.S.S.G., § 2D1.1 (n.12) (Nov. 1992). The provision in both guidelines reads:
> [W]here the court finds that the defendant did not intend to produce and was not reasonably capable of producing the negotiated amount, the court shall exclude from the guideline calculation the amount that it finds the defendant did not intend to produce and was not reasonably capable of producing.

U.S.S.G., § 2D1.4 comment. (n.1) (Nov. 1991); U.S.S.G., § 2D1.1 (n.12) (Nov. 1992).

installments showed an intent and capacity to fill the order. For example, the government's undercover agent testified that the course of negotiations with Moore indicated a capacity to deliver up three to four ounces a week, and Moore never indicated an intent not to ultimately deliver all nine ounces. Consequently, we reject Moore's argument that the district court's inclusion of the nine ounces was improper under section 2D1.4.

## V.

In light of our conclusion that the record supports a conclusion that as a matter of law, Moore's uncharged, unconvicted, post-conspiracy drug deal should be considered as relevant conduct in his sentence, we AFFIRM.