UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

MACARIO A. MALDONADO,

      Defendant-Appellant.

No. 99-3334
(D.C. No. 98-40082-02-DES)
(District of Kansas)

ORDER
Filed June 26, 2000

Before **SEYMOUR**, Chief Judge, **EBEL** and **BRISCOE**, Circuit Judges.

This matter is before the court on Appellant's petition for panel rehearing filed June 14, 2000. The petition for rehearing is granted for the sole purpose of correcting factual assertions made in the original Order and Judgment and to further clarify the court's reasoning. The petition is denied in all other respects. A revised order and judgment is attached to this order.

ENTERED FOR THE COURT

Patrick Fisher, Clerk of Court

By:
      Keith Nelson
      Deputy Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 26 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

MACARIO A. MALDONADO,

    Defendant-Appellant.

No. 99-3334
(D.C. No. 98-40082-02-DES)
(District of Kansas)

**REVISED ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, Chief Judge, **EBEL** and **BRISCOE**, Circuit Judges.

Defendant-Appellant Macario A. Maldonado ("Maldonado") appeals his

sentence on one count of conspiracy to distribute methamphetamine in violation

of 21 U.S.C. § 846. Maldonado argues that the district court erred (1) in

determining the base offense level; (2) in enhancing the base offense level for

possession of a firearm; and (3) in refusing to reduce the base offense level for a

---

[*] After examining appellant's brief and the appellate record, this panel has
determined unanimously that oral argument would not materially assist the
determination of this appeal. See Fed. R. App. P. 34(a)(2) and 10th Cir. R.
34.1(G). The case is therefore ordered submitted without oral argument. This
Order and Judgment is not binding precedent, except under the doctrines of law of
the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be
cited under the terms and conditions of 10th Cir. R. 36.3.

minimal role in the offense. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we AFFIRM.

## BACKGROUND

Maldonado and a co-defendant, William Zugg ("William"), were charged in a four-count indictment with several drug-related charges: (1) conspiracy to distribute methamphetamine; (2) distribution of methamphetamine; (3) maintaining a place for the purpose of distributing or using a controlled substance; and (4) use of a firearm during a drug-trafficking crime.

The charges stemmed from a controlled purchase of drugs between a confidential informant ("CI") working with the Drug Task Force in Salina, Kansas, and Maldonado and several of his associates. On June 2, 1997, the CI arranged to purchase five to six ounces of methamphetamine from Michael Linn for $9,000.00. The CI then drove Linn to an apartment where Linn attempted to set up the purchase of the drugs with several of his associates. After a period of time, Linn exited the apartment and approached the CI's car. Linn informed the CI that a person inside the apartment was counting the money to ensure it was all there, and if it was, then the methamphetamine would be picked up.

A short time after this conversation, Task force agents observed Maldonado, Jesse Garman, and an unidentified male drive away from the house in a grey Buick. After a period of time elapsed, the CI again made contact with

Linn, who advised the CI that Garman was out of town trying to make contact with the source, and that only one ounce of methamphetamine could be obtained. The CI was told to meet Linn at the Alco parking lot at 11:30 p.m. that evening, where an exchange of drugs and money was to take place. The CI then left the apartment, and Garman returned a short time later carrying a small black pouch. Though William, Maldonado, and Garman were unsuccessful in getting the five ounces, William sold Linn an ounce of methamphetamine he had for $2000. The remaining $7000 was returned to Linn.

During surveillance of the apartment, Task Force Agents observed Linn leave the apartment and go to a convenience store across the street. Linn then got into a cab. Officers stopped the cab and searched the vehicle. The officers located $7002 and twenty-six grams of methamphetamine. The agents then returned to the apartment where they encountered Garman, who was walking around outside in front of the apartment. Garman told the agents that Linn had contacted him about a drug transaction, and that Linn had given him $9000 to purchase methamphetamine. Garman claimed, however, that he had no intention of purchasing any methamphetamine, but instead intended to steal the money and leave town.

Task Force Agents then obtained a search warrant and searched William's residence. After entering the house, officers encountered Maldonado, who

- 3 -

apparently lived with William at the time, as well as several items of drug paraphernalia, marijuana residue, rolling papers, a spoon with traces of methamphetamine, and triple beam scales. Several handguns, shotguns and assault rifles were also recovered. One officer stated that when he encountered Maldonado, he saw an assault rifle drop from the area of his hands. Lawrence Zugg, William Zugg's brother, told officers that Maldonado claimed that as the cops showed up, "he grabbed a 'Mac 90' rifle and held of the cops as long as he could."

William stated to officers that he and Maldonado had taken Garman to Great Bend, Kansas, to attempt to buy drugs. When they were unable to locate the drugs in Great Bend, William provided Garman with one 8-ball of methamphetamine, which was then stepped up with a cutting agent to make it look like one ounce. William then had Maldonado dropped off at his house to clean out any drugs in his house and watch for cops.

Maldonado pleaded guilty to one count of conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 846. The government dismissed the remaining counts of the indictment. Maldonado was sentenced to a term of 36 months in the custody of the Bureau of Prison. He now appeals his sentence.

**DISCUSSION**

**I. Maldonado's Base Offense Level pursuant to U.S.S.G. § 2D1.1**

Maldonado argues that the district court improperly calculated his offense level under U.S.S.G. § 2D1.1 by attributing an amount of methamphetamine to him that neither he nor any of his co-conspirators intended to produce nor were capable of producing. The sentencing court calculated the base offense level based on the negotiated-for five ounces of methamphetamine, rather than the twenty-six grams that was recovered from Linn. "We review a district court's legal interpretations of the Sentencing Guidelines de novo, but the factual findings underlying the district court's calculation of the offense level may be reversed only if they are clearly erroneous." United States v. Moore, 130 F.3d 1414, 1416 (10th Cir. 1997).[1]

---

[1] Maldonado contends that the district court failed to make factual findings with regard to his intent and ability to deliver the negotiated amount of drugs. We disagree. At the sentencing hearing the district court specifically stated with regard to defendant's objections that he found the police reports to be true and accurate regarding the facts of this case. The police reports contain statements by Lawrence Zugg that he would testify that William, Maldonado, Garman, and Linn discussed a drug deal involving 5 ounces of methamphetamine and that William and Maldonado were to "get the dope, [and] give it to Garman who would actually complete the deal." The report further stated that Lawrence suggested they steal the money from Linn, however, the other three agreed to complete the five ounce deal. These statements support a finding of intent and ability to provide the drugs. Although the court found the police reports accurate with regard to objections one and two, and Maldonado objected to his intent and ability in objection three, we believe the court's statements with regard to the accuracy of the reports are sufficient carries over to objection three, where the district court further added that the negotiated amount controls.

When a sentencing court calculates a defendant's base offense level under the Sentencing Guidelines, it is required to consider quantities of drugs beyond the amounts specified in the counts of conviction. Under U.S.S.G. §1B1.3(a)(2), the court analyzes "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." As part of that calculation, application note 12 of § 2D1.1 requires the court to include the agreed-upon quantity of drugs in determining the base offense level unless the sale is completed. However, note 12 further explains that:

> if the defendant establishes that he or she did not intend to provide, or was not reasonably capable of providing, the agreed-upon quantity of the controlled substance, the court shall exclude from the offense level determination the amount of controlled substance that the defendant establishes that he or she did not intend to provide or was not reasonably capable of providing.

U.S.S.G. § 1D1.1, note 12.

Under § 1D1.1, the government bears the burden of proving by a preponderance of the evidence the agreed-upon quantity of drugs. See Moore, 130 F.3d at 1416. Once the government has met this burden, the clear language of the guidelines provides that the defendant then has the burden of establishing that he did not intend to provide or was not reasonably capable of providing that amount of drugs. See U.S.S.G. § 1D1.1 note 12; cf. United States v. Stavig, 80 F.3d 1241, 1246 (8th Cir. 1996) (holding that the defendant has the burden of proof to demonstrate that he had neither the intent nor the ability to deliver the

- 6 -

agreed quantity of drugs under 1994 version of Sentencing Guidelines); <u>United</u> <u>States v. Barnes</u>, 993 F.2d 680, 683-84 (9th Cir. 1993) (holding defendant has burden to establish did not have intent or ability because defendant always bears burden of proof when attempting to lower the offense level); <u>United States v.</u> <u>Christian</u>, 942 F.2d 363, 368 (6th Cir. 1991) (same), <u>overruled on other grounds</u> <u>by</u>, <u>United States v. Washington</u>, 127 F.3d 510 (1997) (recognizing part of holding was abrogated by <u>Bailey v. United States</u>, 516 U.S. 137 (1995)). <u>But</u> <u>see</u> <u>United States v. Huzut</u>, 140 F.3d 187, 190-92 (2d Cir. 1998) (holding under current version of Guidelines that government always maintains the burden of proof on intent and ability to provide drugs, however, the defendant has the burden to produce some evidence to show lack of intent or ability); <u>United States</u> <u>v. Raven</u>, 39 F.3d 428, 434-35 (3d Cir. 1994) (determining that ultimate burden remains with government under an earlier version of Guidelines); <u>United States v.</u> <u>Garcia</u>, 69 F.3d 810, 819 (7th Cir. 1995) (holding government has burden of proving intent and ability under earlier version of Guidelines).

In this case, the parties do not dispute that the government carried its burden of proving that the defendant was involved in a conspiracy that agreed to sell, and the CI agreed to purchase, five ounces of methamphetamine. In addition there is no disagreement concerning the fact that the deal was never completed. Thus, the negotiated amount controls for purposes of sentencing, unless

Maldonado can establish that he had lacked either the intent or the ability to deliver the negotiated amount. Maldonado argues that he did not intend, nor did he have the ability, to provide the five ounces.

Maldonado first argues that the co-conspirators actually intended to steal the money taken from the CI and never intended to produce the methamphetamine. The actions of the defendant and his co-conspirators belies this contention. The defendant and his co-conspirators took the $9000 from the CI and then proceeded to go to Great Bend, Kansas in an attempt to acquire the drugs. When this strategy failed, they returned to William's house to obtain one ounce of methamphetamine to sell to the CI. None of these actions indicate that the defendant and his co-conspirators had the intention of simply stealing the CI's money. Rather, these actions show they had every intention of selling methamphetamine.

Second, Maldonado argues that neither he nor any of his co-conspirators was capable of providing the five ounces of methamphetamine. He argues that this is shown by the fact that he and his co-conspirators drove around Great Bend, Kansas in an attempt to acquire the five ounces, but were ultimately only able to obtain one ounce. This argument also fails. The police reports, which the district

court found to be a true and accurate account of the facts,[2] reveal that William Zugg was involved in large amounts of drug trafficking. Lawrence Zugg, William's brother, reported to the police that William was being supplied approximately one to three ounces of methamphetamine and between one to five pounds of marijuana every week. William also admitted to the police that he was heavily involved in drug trafficking. Lawrence further stated that Maldonado was William's "right-hand man" during this time. Under these facts, it is clear that the defendant and his co-conspirators had the ability to acquire the five ounces of methamphetamine. The fact that they had difficulty obtaining the full five ounces on the day in question does not alter this conclusion. A particular source may not be available on a particular day, but this does not change the fact that the defendant and the co-conspirators were shown to be capable of ultimately producing the agreed upon amount at some time. Because the deal was never completed, and the evidence produced by the government showed that the defendant was capable of obtaining the requested amount of drugs, we cannot say that the defendant and his co-conspirators would not have ultimately delivered the

_____

[2] We have no reason to disagree with the district court concerning the accuracy of these reports. Maldonado argues that the reports are not reliable because they consist of interviews with William and Lawrence Zugg who are chronic liars. Besides making this assertion, Maldonado has presented this court with no evidence that would lead us to believe that the Zuggs' statements in this case were in fact untruthful. Thus, Maldonado has not shown that the district court clearly erred in finding these reports accurate.

agreed upon amount to the CI.  Thus, the district court did not err in calculating the offense level based on five ounces of methamphetamine.

**II. Enhancement for Possession of a Dangerous Weapon**

Maldonado argues that there was no evidence to support a two-level enhancement under U.S.S.G. § 2D1.1(b)(1).  We review the district court's factual findings under § 2D1.1(b)(1) for clear error and review its interpretation and application of the guidelines de novo.  See United States v. Flores, 149 F.3d 1272, 1279 (10th Cir. 1998).

Section 2D1.1(b)(1) provides: "If a dangerous weapon (including a firearm) was possessed, increase by 2 levels."  The term offense is defined under the guidelines as the "conviction and all relevant conduct under § 1B1.3 (Relevant Conduct)."  U.S.S.G. § 1B1.1 note 1(l).  Here, several of the dismissed counts of the indictment would require grouping under U.S.S.G. § 3D1.2(d).  U.S.S.G. § 1B1.3(a)(2) provides that, "in such event [when dismissed counts require grouping], specific offense characteristics are to be determined with reference to all acts that were part of the same course of conduct or common scheme or plan as the offense of conviction."  United States v. Roederer, 11 F.3d 973, 982 (10th Cir. 1993) (internal quotations omitted).

"Possession of a weapon in connection with a drug trafficking offense is established if the government proves by a preponderance of the evidence that a

temporal and spacial relation existed between the weapon, the drug trafficking activity, and the defendant." Flores, 149 F.3d at 1280 (internal quotations omitted). The necessary nexus between the weapon, drug trafficking and defendant may be established by showing that "the weapon was located nearby the general location where drugs or drug paraphernalia are stored or where part of the transaction occurred." Id. (emphasis added) (internal quotations omitted). "Once the government establishes that the weapon was possessed in proximity to the drugs or transaction, the burden shifts to the defendant to show it is clearly improbable that the weapon was related to the offense." Flores, 149 F.3d at 1280 (internal quotations omitted).

In this case, the government met its burden of showing that Maldonado was in possession of a weapon at the house where drug paraphernalia was stored. When the police arrived at William's house to conduct a search, an officer testified that he saw a gun fall from the location of Maldonado's hands as he entered the house. In addition, Lawrence and William Zugg stated to the police that Maldonado had bragged that he had held off the cops with a "Mac 90" that

was in the house.[3]  Thus, the government established Maldonado's possession of the weapon.

In addition, the government established that Maldonado possessed a weapon that was in close temporal and spatial proximity to the drug trafficking activity. When the police searched William Zugg's home they found drug related items, including drug paraphernalia, a spoon with traces of methamphetamine, and triple beam scales.  In addition, Lawrence Zugg's statements to the police indicate that William's Zugg's residence, where Maldonado was arrested, was a locus of drug distribution activities.  He stated that "on numerous times, Maldonado along with himself would cut, weigh and package the drugs while at Williams house."  Moreover, William Zugg revealed to the police that he had dropped Maldonado off at his house on the day of the raid to clear out the drugs.   Thus, the government has established the necessary connection between the drugs, the weapon, and the transaction.  Maldonado has produced no evidence to show that it was clearly improbable that the weapon was connected to the offense.  Therefore, we find that the district court did not clearly err when it enhanced the defendant's sentence pursuant to U.S.S.G. § 2D1.1(b)(1).

---

[3] As discussed in footnote one, supra, Maldonado argues that William and Lawrence Zugg are chronic liars and thus we should not rely on their testimony. The statements of the Zugg brothers, however, is corroborated by the testimony of the officer.  Moreover, Maldonado has produced no evidence to contradict the statements of the officer or the Zugg brothers.

**III. Minimal Participant under U.S.S.G. § 3B1.2(a)**

Maldonado next argues that the district court erred in declining to decrease his offense level based on his role in the offense under U.S.S.G. § 3B1.2(a).  "We review the district court's findings for clear error. . . . Under U.S.S.G.  § 3B1.2, it is the defendant's burden to establish by a preponderance of the evidence that he . . . is entitled to an offense reduction."  United States v. Ayers, 84 F.3d 382, 383 (10th Cir. 1996).

Section 3B1.2(a) provides for a reduction in a defendant's base level "[i]f the defendant was a minimal participant in any criminal activity."  U.S.S.G. § 3B1.2(a).  The commentary to subsection 3B1.2(a) explains that this reduction is "intended to cover defendants who are plainly among the least culpable of those involved in the conduct of the group.  Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant."  U.S.S.G. § 3B1.2(a) note 1.  The notes also suggest that the downward adjustment should be used infrequently.  See U.S.S.G. § 3B1.2(a) note 2.

In this case, the police reports reveal that Maldonado was William Zugg's "right hand man" in a drug operation, which sold large quantities of drugs.  Lawrence Zugg, William's brother, told the police that Maldonado was involved in cutting, weighing, and repackaging drugs received in the drug operation.  In

- 13 -

addition, on the night of June 2, 1997, Maldonado drove in the car with William Zugg and Garman in an attempt to locate the methamphetamine for delivery to the CI. When William Zugg became suspicious that the police might be closing in on their operation that night, he instructed Maldonado to return to his house and clear out the drugs and hold off the cops. Moreover, when the police did enter Zugg's house, it was Maldonado who was surrounded by the guns and drug paraphernalia. Under these facts, we cannot say that the district court was clearly erroneous in refusing to decrease Maldonado's base offense level under U.S.S.G. § 3B1.3(a).

ENTERED FOR THE COURT


David M. Ebel
Circuit Judge