**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 15 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DEAN ELTON WILLIAMS,

Defendant-Appellant.

No. 00-7138
(Eastern District of Oklahoma)
(D.C. No. 99-CR-71-B)

**ORDER AND JUDGMENT***

Before **HENRY**, **BRISCOE**, and **MURPHY**, Circuit Judges.

## I. INTRODUCTION

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

This appeal from the United States District Court for the Eastern District of Oklahoma concerns a challenge to the sentence imposed on Dean Elton Williams. Williams pleaded guilty to a charge of Attempted Transfer of Obscene Material to a Minor, in violation of 18 U.S.C. § 1470. The district court sentenced under United States Sentencing Guideline (U.S.S.G.) Section 2G2.1 pursuant to the cross-reference in Section 2G2.4(c)(1), because it found by a preponderance of the evidence that Williams caused his minor daughter to engage in sexual conduct so pictures could be taken of the acts. In addition, the district court enhanced the sentence pursuant to U.S.S.G. Section 3C1.1 because it concluded that Williams committed perjury during the sentencing proceedings. Williams challenges both decisions. This court has jurisdiction under 28 U.S.C. § 1291 and **affirms**.

## II. FACTS

Dean Williams attracted the attention of Oklahoma law enforcement when he engaged in an Internet chat with "okiegirl." To Williams, okiegirl was a 14-year-old girl named Tammy from Oklahoma. In reality, okiegirl was Detective Ed Harwood of the Ardmore, Oklahoma, Police Department. Over the course of several weeks, Williams and Harwood had several Internet chats. During those chats Williams sent images of himself masturbating, nude images of his wife, Janice Williams, and images of minors under the age of 16 having sex. Williams

and Harwood also arranged for Williams to travel to Oklahoma where Williams would pick up okiegirl at the Love's Truck Stop in Ardmore.

Williams and his wife were arrested in Oklahoma at the meeting place Williams and Harwood had agreed upon. Defendant was initially charged with crossing state lines to engage in sex with a minor, in violation of 18 U.S.C. § 2423(b) and attempted transmission of obscene matter to a minor, in violation of 18 U.S.C. § 1470. The government sought forfeiture of certain property, pursuant to 18 U.S.C. § 1467(a)(3), belonging to Williams. In exchange for a guilty plea on the attempted transmission count, the government dropped the § 2423(b) charge.

At Williams' first sentencing hearing, there arose a dispute as to whether the base offense level of 15 should be enhanced by two levels, pursuant to U.S.S.G. § 2G2.4(b)(1), because some of the material transmitted to Detective Harwood involved prepubescent minors or minors under the age of twelve. The government, through an expert, identified four of the pictures transferred to Harwood as containing images of prepubescent minors or minors under the age of twelve. After the expert testified, Williams took the stand and testified that he did not recognize any of the four pictures and that they could not have come from his computer. Following Williams' testimony, the government requested, and the

district court granted, a continuance so that it could search Williams' computer for any of the four pictures.

A subsequent search of Williams' computer revealed two pictures identical to two pictures in the disputed group of four. Germane to this appeal, the search revealed seven other pictures which appeared to investigating officers to be pictures of Williams' children nude and, in some cases, involved in sexual conduct. The government presented testimony from an FBI agent involved in a Hugo, Oklahoma, child pornography case that he had seized computer equipment that contained six other images that appeared to be of Williams' children or stepchildren.

The government also put on the mother of two of Williams' daughters, Gail Franks. Ms. Franks testified that five of the pictures recovered from Williams' computer featured their eldest daughter, Danielle. Ms. Franks testified that Danielle appeared to be five or six years old at the time the pictures were taken, and that she recognized Danielle by "her hair, her eyes" and a distinguishing lump in the middle of Danielle's chest. She also testified that she recognized background furniture and bedding in the five pictures as being from Williams' home. In a sixth picture from Williams' computer, Franks testified that she recognized a mattress as coming from Williams' home. From the six pictures recovered from the Hugo pornography investigation, Franks testified that she

recognized Danielle in at least two pictures, sheets from Williams' home in two pictures, a chair from Williams' home in another picture, and in one picture she identified Williams.

The district court subsequently interviewed Danielle with both sides observing by video. Danielle told how Williams molested her and took pictures of her while she was undressed and while being molested by her father and his friends. She identified herself in four pictures, three taken from Williams' computer and one taken in the separate pornography investigation. She also identified a spiked collar in the pictures she said Williams made her wear. She identified furnishings and personal belongings in the backgrounds of the pictures. Danielle indicated she knew it was wrong to lie and would not lie about the pictures even if her mother told her to do so. The district court determined that in regard to her demeanor and credibility "that she is a very smart little girl and very credible in what she said and I think she was telling the truth about what she told me."

Williams put on several witnesses to cast doubt on the identity of the children and adults in the pictures. He called his mother who testified that she did not recognize her son or her granddaughter Danielle in any of the pictures taken from Williams' computer or the pictures that turned up in the Hugo investigation. On cross-examination she admitted that she had not seen Williams'

genitals since he was a small boy, but insisted that the male in the pictures, whose face could not be seen, was not her son, since Williams had a protruding belly button, while the male in the pictures did not.

A one-time police officer, Bobby Hall, Williams' witness, testified that he knew Williams' daughters at the age of the girls in the pictures, and that Williams' daughters were not featured in the pictures. Mr. Hall was engaged to Williams' sister at the time of his testimony. On cross-examination, Hall stated that he did not recognize any of the furnishings in the pictures as belonging in Williams' house, though he had been there frequently to investigate complaints of sexual abuse of the children. Hall admitted that he would not be surprised to find out that third parties had observed Williams' daughters engaged in sexual play that seemed advanced given their age. Hall also admitted he was not surprised when he found out Williams had been charged in the current case.

Williams' sister, Leanne Williams, testified that she did not recognize the girls in any of the pictures, and that the male featured in the pictures had more body hair than her brother. On cross-examination, Leanne Williams testified that she did not recognize any of the furnishings in the pictures as belonging to her brother, but admitted that she had not been in his home often enough to know what his house furnishings would look like.

Williams himself testified that he did not recognize any of the furnishings in the pictures, that he did not recognize his daughters in any of the pictures, and that he did not recognize himself in the pictures.

Williams also tried to cast doubt on the credibility of Gail Franks. Former police officer Hall testified that Franks routinely lied to him during investigations into whether Williams molested any of his children and that she had a reputation in the community for dishonesty. Williams's mother testified that Franks had stolen some of her property and did not have a reputation for honesty. Williams's sister, Leanne Williams, testified that Franks' earlier testimony that Franks had not contacted Williams or his family since January of 2000 was false.

In addition, Williams attempted to impugn the credibility of Danielle through testimony of Jonathon, his stepson, and Kristina, his stepdaughter. Kristina's testimony contradicted several aspects of Danielle's. In particular, Kristina denied ever having her picture taken with her clothes off even though Danielle had identified Kristina in several photographs. She denied seeing Danielle in a spiked collar or tied up. But she testified that Williams touched her under her underwear, though she was fully clothed. Finally, Kristina testified that she had no idea whether Danielle usually told the truth.

Jonathon testified that he did not know whether Danielle or Kristina had their pictures taken without their clothes. He denied hearing from Danielle or

Kristina that Williams had taken nude pictures of them or that Williams had molested them. He also testified that he did not see Danielle wear a spiked collar. Jonathon said that Danielle usually told the truth but had lied once over a dispute over a board game.

The district court found by a preponderance of the evidence that Williams raped or had another man rape his daughter Danielle for the purposes of taking pictures and distributing them over the Internet. A cross reference in the relevant sentencing guideline, § 2G2.4, provides that guideline § 2G2.1 should be applied if a defendant caused a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of the conduct. *See* U.S.S.G. § 2G2.4(c)(1). The district court applied § 2G2.1.

The district court further found that Williams had obstructed justice by committing perjury. When faced with four pictures he allegedly sent to Harwood and that the government contended featured girls under the age of twelve, Williams testified that the pictures could not have come from his computer. The district court found that testimony in the case "clearly refute[s]" Williams' statements. Because Williams purposefully committed perjury to avoid an enhancement of his sentence, the district court found the two-level enhancement contained in U.S.S.G. § 3C1.1 to be applicable.

After ruling on various other enhancements and reductions not relevant to this appeal, the district court computed an offense level of 35, which, based on Williams' criminal history, gave an imprisonment range of 168 to 210 months. Because the statutory maximum for violation of 18 U.S.C. § 1470 was 120 months, the district court sentenced Williams to ten years' imprisonment.

## III. DISCUSSION

### A. Standard of Review

This court reviews legal interpretation and application of the sentencing guidelines *de novo*. *See United States v. Wilkinson*, 169 F.3d 1236, 1237 (10th Cir. 1999); *United States v. Pappert*, 112 F.3d 1073, 1078 (10th Cir. 1997). Any factual findings of the district court are upheld unless clearly erroneous. *See Pappert*, 112 F.3d at 1078. We read the evidence and inferences drawn from the evidence in the light most favorable to the district court's sentence. *See United States v. Conley*, 131 F.3d 1387, 1389 (10th Cir. 1997).

### B. Cross-Reference

Williams does not contend that cross reference § 2G2.4(c)(1) should not apply because there was not adequate proof under a preponderance of the evidence standard that he caused his minor daughter to engage in sexually explicit conduct for the purpose of photographing the conduct. Rather, Williams contends that the government should have had to prove beyond a reasonable doubt that he

-9-

caused the conduct before it used the cross reference in U.S.S.G. § 2G2.4(c)(1). Williams is in error.

The sentencing guidelines provide that the preponderance of the evidence standard should be used in application of the guidelines to the facts of a case. *See* U.S.S.G. § 6A1.3, cmt. Furthermore, this circuit has held that "[s]entencing determinations of relevant conduct and offense characteristics must be supported by a preponderance of the evidence." *See United States v. Gomez-Arrellano*, 5 F.3d 464, 466 (10th Cir. 1993). "Relevant conduct" includes conduct relating to application of cross references. *See* U.S.S.G. § 1B1.3(a). The district court did not err in using the preponderance of the evidence standard to determine if cross reference § 2G2.4(c)(1) applied.

The district court's determination that the government met its burden was not in error. Danielle's mother identified Danielle in five of the pictures coming from Williams' computer and in four of the pictures from the Hugo pornography investigation. She also identified Williams in one of the pictures. Danielle identified herself in three pictures from Williams' computers and in one picture from the separate pornography investigation. In both a picture from the Hugo investigation and a picture from Williams' computer, the subject of the picture is wearing a spiked collar. Danielle and her mother identified Danielle as the subject of both.

Williams did put witnesses on the stand who testified that Danielle was not in any of the pictures and that Danielle's mother, Gail Franks, had a reputation for dishonesty. Further, both Jonathon and Kristina gave testimony that conflicted in some respects with Danielle's testimony, but neither testified that Danielle was generally dishonest; quite the opposite.

Though there is some conflicting evidence in the record as to the identity of the girl or girls in the pictures, the district court resolved the factual dispute by deciding it was Danielle in the pictures. Supported as it is by both Danielle's mother and Danielle, who the district court found very credible, this court cannot say that the district court's finding is clearly erroneous. *See United States v. Moore*, 130 F.3d 1414, 1416 (10th Cir. 1997) (declining to disturb district court's factual findings unless without support in the record or appellate court has "definite and firm conviction" or error). Because the pictures involved Danielle wearing a spiked collar, the district court's determination that Williams caused Danielle to engage in sexually explicit conduct for purposes of producing a photograph of the conduct was amply supported. *Cf.* 18 U.S.C. § 2256(2) (defining "sexually explicit conduct" to include "sadistic or masochistic abuse"); U.S.S.G. § 2G2.2, cmt. n.1 (giving "sexually explicit conduct" the definition given in 18 U.S.C. § 2256).

Furthermore, Danielle testified that her father often took pictures of her in the nude and had himself and his friends molest her so that he could take pictures. The district court found Danielle to be a credible witness. Such a credibility determination is solely within the district court's province. *See United States v. Sloan*, 65 F.3d 861, 865 (10th Cir. 1995). Danielle's testimony as to Williams' molestation and photographing of the acts was not contradicted. The testimony thus provides a sound, independent basis to apply the cross reference.

## C. Obstruction of Justice

Because we find application of the cross reference in § 2G2.4(c)(1) to be proper, we need not consider Defendant's contention that the two-level enhancement under U.S.S.G. § 3C1.1 was improper. Because the base offense level under § 2G2.1 was 27 and the district court imposed several enhancements besides the obstruction of justice enhancement, none of which were appealed, the sentencing range before the § 3C1.1 enhancement was 135-168 months. The statutory maximum for violations of 18 U.S.C. § 1470 is 120 months. Thus, the district court would have sentenced to 120 months, *i.e.* the same sentence, even without the two-level enhancement for obstruction of justice. *Cf. Williams v. United States*, 503 U.S. 193, 203 (1992) (holding that remand for resentencing when district court misapplies guidelines is inappropriate if "the error did not affect the district court's selection of the sentence imposed").

**V. CONCLUSION**

The sentence imposed by the District Court for the Eastern District of Oklahoma is **AFFIRMED**.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge