FILED
United States Court of Appeals
Tenth Circuit

December 7, 2009

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DWIGHT EDMOND SAGO,

Defendant - Appellant.

No. 09-1192
(D. Ct. No. 1:08-CR-00251-JLK-1)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA** and **GORSUCH**, Circuit Judges, and **STAMP**, District Judge.[**]

---

Defendant-appellant Dwight Edmond Sago was tried and convicted by a jury of

one count of possessing with intent to distribute crack cocaine in violation of 21 U.S.C.

§§ 841(a)(1) and (b)(1)(B)(iii).  During sentencing, the district judge included as relevant

conduct a quantity of crack cocaine Mr. Sago possessed more than five months prior to

the activity for which he was charged.  *See* United States Sentencing Guidelines Manual

("U.S.S.G." or "Guidelines") § 1B1.3.  Mr. Sago appeals the consideration of that drug

quantity, contending that the government failed to prove that his possession of it qualifies

---

[*]This order and judgment is not binding precedent except under the doctrines of
law of the case, res judicata and collateral estoppel.  It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**]The Honorable Frederick P. Stamp, Jr., Senior United States District Judge for
the Northern District of West Virginia, sitting by designation.

as relevant conduct. He also argues that the district court erred by failing to make a specific finding that the drugs satisfy the Guidelines' definition of relevant conduct. We take jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

## I. BACKGROUND

Mr. Sago was arrested on March 20, 2008, as he left an apartment in Colorado Springs that police officers were surveilling in connection with a drug trafficking investigation. As police officers were approaching the apartment with the intention of executing a search warrant, Mr. Sago ran to a car and started to drive away but was stopped by the police. When the police officers opened Mr. Sago's car door, they saw him drop something which they later determined was a bag containing crack cocaine. After removing Mr. Sago from the car, an officer patted him down and found a second bag containing crack cocaine in his pocket. Officers found a third bag containing crack cocaine inside a false-bottomed aerosol can in the car. After transporting Mr. Sago to the police station, the arresting officer found a scale on the floorboard of the patrol car used to transport him. Mr. Sago later admitted to dropping the scale in the patrol car. Laboratory testing showed that the three bags contained a total of 34.9 grams of crack cocaine.

Police Officer Troy Lindvall testified at trial that, on October 9, 2007, he stopped Mr. Sago after observing several traffic violations. When Officer Lindvall patted Mr. Sago down, he found a digital scale and a plastic bag of something that appeared to be crack cocaine in Mr. Sago's pants pocket. Officer Lindvall field-tested the substance in

the bag, which tested positive for cocaine. Officer Lindvall estimated the bag contained about an ounce, or 28 grams, of crack cocaine, which the officer described as a "distribution" amount.

After the jury convicted Mr. Sago, a presentence investigation report ("PSR") was prepared that included both the government's and Mr. Sago's sentencing recommendations. Both parties recognized that the evidence at trial supported a finding that Mr. Sago possessed 34.9 grams of crack cocaine, which produced a base offense level of 26. *See* U.S.S.G. § 2D1.1(c)(7). The government, however, included an additional 24.6 grams which it determined was the amount found by Officer Lindvall during the October 9 traffic stop. The resultant quantity of 59.5 grams of crack cocaine produced a base offense level of 30. *See id.* § 2D1.1(c)(5).

In his sentencing statement, Mr. Sago objected to the inclusion of the crack cocaine seized from him on October 9 because it was "only 'field tested' and the weight of the substance was a gross weight that included the packaging." Thereafter, Mr. Sago objected to the inclusion of the October 9 incident as relevant conduct because (1) evidence of that incident should not have been admitted at trial under Fed. R. Evid. 403 and 404(b), as Mr. Sago argued at the final pre-trial conference; and (2) "the offense level should be based on the amount the jury found he had possessed which would result in an offense level of 26 based on 34.9 grams of crack cocaine." Thereafter, the PSR was amended to reflect ATF Special Agent Peter Merenyi's report that a laboratory analysis of the crack cocaine seized from Mr. Sago on October 9 indicated that the net weight of

the drug was 16.7 grams, not 24.6 grams as originally reported. Even with this reduced amount, however, the total quantity of crack cocaine seized from Mr. Sago on October 9 and March 20 was still greater than 50 grams and thus still produced a base offense level of 30 under U.S.S.G. § 2D1.1(c)(5).

At the sentencing hearing, the court overruled Mr. Sago's objection to inclusion of the October 9 incident as relevant conduct, finding that the drugs were "relevant and material" and could be taken into consideration. The district court therefore found that Mr. Sago's offense level was 30, his criminal history placed him in Category II, and the applicable advisory Guidelines range was 108–135 months. The court sentenced Mr. Sago to 120 months' imprisonment. Mr. Sago now appeals his sentence.

## II. DISCUSSION

Mr. Sago argues that the crack cocaine seized during his October 9, 2007 traffic stop should not be considered when determining his base offense level under the Guidelines because: (1) the district court improperly held that the drugs satisfied the definition of relevant conduct, and (2) the district court failed to make a specific finding as to relevant conduct. The government contends that Mr. Sago failed to preserve either claim of error by the trial court. "To preserve an issue for our review, a party must make a proper, timely objection at trial or sentencing on the same specific ground he or she is appealing." *United States v. McClellan*, 165 F.3d 535, 551 (7th Cir. 1999) (emphasis omitted). Mr. Sago's counsel objected to the consideration of the October 9 drugs as relevant conduct but never did so on the particular grounds now addressed on appeal –

instead, she focused her objections on Fed. R. Evid. 403 and 404 and the fact that she understood the drugs to have been only field tested. Specific and timely objections "can alert the district court and opposing counsel, so that a potential error can be corrected, obviating any need for an appeal." *United States v. Lopez-Flores*, 444 F.3d 1218, 1221 (10th Cir. 2006). Nevertheless, assuming arguendo that Mr. Sago preserved the issue for appeal, we hold that the district court properly considered the October 9 drugs as relevant conduct.

Mr. Sago challenges the application of the drugs found in his possession on October 9 as relevant conduct, which resulted in increasing his base offense level from 26 to 30. "We review the district court's factual findings to determine whether there was clear error, and we review the ultimate determination of relevant conduct de novo." *United States v. Egbert*, 562 F.3d 1092, 1096–97 (10th Cir. 2009) (quoting *United States v. Osborne*, 332 F.3d 1307, 1311 (10th Cir. 2003)).

Under the Guidelines, a defendant's offense level is determined by considering the conduct underlying the offense of conviction as well as other "relevant conduct." *See* U.S.S.G. § 1B1.3(a). Relevant conduct for drug offenses such as Mr. Sago's is defined as "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." *Id.* § 1B1.3(a)(2). The parties appear to agree that if the October 9 conduct qualifies as relevant conduct it does so under the "course of conduct" clause. "'Same course of conduct' 'does not require a *connection* between the acts in the form of an overall criminal scheme. Rather the guideline term

- 5 -

contemplates that there be sufficient similarity and temporal proximity to reasonably suggest that repeated instances of criminal behavior constitute a pattern of criminal conduct.'" *United States v. Roederer*, 11 F.3d 973, 979 (10th Cir. 1993) (quoting *United States v. Perdomo*, 927 F.2d 111, 115 (2d Cir. 1991)). "Similarity, regularity, and temporal proximity are the significant elements to be evaluated." *Id.* (citing *United States v. Hahn*, 960 F.2d 903 (9th Cir. 1992)); *see also* U.S.S.G. § 1B1.3 cmt. n.9(B).

After reviewing the record, we agree with the district court that the October 9 incident properly constitutes relevant conduct. On both occasions, Mr. Sago possessed distribution-level quantities of crack cocaine and digital scales. Although Mr. Sago initially argued that the October 9 evidence was as indicative of possession as distribution, he now concedes that the drugs were held for distribution. Furthermore, testimony by Bonita Williams and Michael Britton established that Mr. Sago was selling cocaine with some regularity during at least a portion of the five months between the two occurrences. Finally, we find unconvincing Mr. Sago's argument that the five-month period between the two occurrences requires a stronger showing of similarity or regularity. While it is true that when one factor is absent "a stronger showing of at least one of the other factors is required," U.S.S.G. § 1B1.3 cmt. n.9(B), we find the five-month break "insufficient to establish an interruption in his course of conduct." *United States v. Moore*, 130 F.3d 1414, 1419 (10th Cir. 1997) (holding sale of narcotics was relevant conduct despite a six-month break between sales to undercover officers). Mr. Sago's contention that the two instances of conduct are unrelated is thus not persuasive.

Mr. Sago also contends that the district court erred in failing to make an express, specific finding that the October 9 incident was part of the same course of conduct as the offense of conviction. Mr. Sago failed to raise this issue before the district court; therefore, we review for plain error. *United States v. Mancera-Perez*, 505 F.3d 1054, 1058 (10th Cir. 2007). "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Lopez-Flores*, 444 F.3d at 1222 (quotations omitted). "Error is plain only if it is . . . contrary to well-settled law." *United States v. Commanche*, 577 F.3d 1261, 1270 (10th Cir. 2009) (quotations omitted).

Mr. Sago's argument does not satisfy the first two prongs of plain-error review. First, at the sentencing hearing the district court stated, "I do think the drugs from that separate arrest are relevant and material for purposes of sentencing." This statement on the record sufficiently explains the district court's decision to apply § 1B1.3. Furthermore, we have never required that a district court make *explicit* findings on the record concerning each factor in the same-course-of-conduct analysis. To the extent other circuits suggest such a requirement, we cannot say that it is well-settled law in this circuit. *Compare United States v. Ortiz*, 431 F.3d 1035, 1042–43 (7th Cir. 2005) (requiring a district court to "explicitly state and support . . . the finding that the unconvicted activities bore the necessary relation to the convicted offense") (quotations omitted) *with Moore*, 130 F.3d at 1417 (requiring only a "specific finding[] that the offense is part of the same course of conduct or common scheme or plan") (quotations

- 7 -

and alterations omitted). If Mr. Sago desired clarification as to the district court's reasoning behind its conclusion that the October 9 conduct was relevant conduct, he should have raised the issue with the district court. The district court did not commit plain error by failing to make a more specific and explicit finding regarding "course of conduct."

### III. CONCLUSION

The district court properly considered the drugs found in Mr. Sago's possession on October 9, 2007, as relevant conduct for purposes of sentencing. We therefore AFFIRM Mr. Sago's sentence.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge